NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0411n.06

No. 23-5872

| | |
|---|---|
| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | **FILED** Oct 18, 2024 KELLY L. STEPHENS, Clerk |

BRANDON CARRIER,

    Plaintiff-Appellant,

v.

MATT PATTERSON, Captain of Carter County Jail,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: McKEAGUE, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Brandon Carrier sued Captain Matt Patterson for alleged constitutional violations related to Carrier's conditions of confinement in the Carter County Jail. The district court dismissed Carrier's pro se complaint under the Prison Litigation Reform Act's prescreening mechanism. *See* 28 U.S.C. § 1915A. Now represented by counsel, Carrier appeals. We affirm.

I.

According to Carrier's complaint, Captain Patterson placed Carrier in administrative segregation as early as April 2023. There, Carrier spent most of each day in an isolation cell "used for medical watch or short term lockdown" and took meals and recreation time alone. On May 22, 2023, Carrier was alone in the recreation area while jail staff served lunch to inmates inside their cells. Corrections Officer Rymer (not a defendant here) opened inmate Bobby Lee Porter Jr.'s cell door, which gave Porter access to the recreation area and thus to Carrier. Porter attacked Carrier,

threatened to "knock [him] out" and "F— [him]," and then pulled down his own pants and tried "to mount" Carrier. Carrier's complaint does not state what happened next but says the incident caused him to experience "flashbacks an[d] nightmares" related to sexual abuse he suffered as a child.

Carrier sued Patterson under 42 U.S.C. § 1983 for placing him in isolation, for failing to protect him from Porter, and for preventing him from pressing charges against Porter. The district court screened Carrier's complaint under the PLRA and dismissed it for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). This appeal followed.

## II.

We review de novo a district court's dismissal of a prisoner's complaint under the PLRA's screening mechanism. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). "In determining whether a prisoner has failed to state a claim, we construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that would entitle him to relief." *Wershe v. Combs*, 763 F.3d 500, 505 (6th Cir. 2014).

Carrier argues that the district court applied the wrong standard to his failure-to-protect claim, and he is probably right. The Eighth Amendment's protection against "cruel and unusual punishment" imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The Due Process Clause of the Fourteenth Amendment provides the same protections to pretrial detainees." *Westmoreland v. Butler County*, 29 F.4th 721, 727 (6th Cir. 2022). Although Carrier's complaint invokes the Eighth Amendment's protections against cruel and unusual punishment, it also indicates that his "place of present confinement" was the "Carter County Jail" and references "Sheriff Mike Frayley."

Given the liberality with which we read pro se complaints, we agree that the district court should have applied the Fourteenth Amendment to these facts. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

Until recently we analyzed Eighth and Fourteenth Amendment claims under the same two-prong analysis, which required the inmate to show that he was, "objectively speaking, incarcerated under conditions posing a substantial risk of serious harm" and that the defendant "was subjectively aware of the risk and failed to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (cleaned up). But we have since held that the different amendments require different standards for the subjective component of the test. *See Brawner v. Scott County*, 14 F.4th 585, 596 (6th Cir. 2021). The objective component remains the same for both. *See Westmoreland*, 29 F.4th at 729.

We need only address the objective component here. Under that component, to bring a failure-to-protect claim, a plaintiff must plead facts to show that his conditions of confinement posed "a substantial risk of serious harm." *Id.* at 726. Not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Thus, "[e]ven where a serious injury occurs, the objective prong of a failure-to-protect claim requires an analysis of the risk to the injured party before the alleged injury occurred." *Zakora v. Chrisman*, 44 F.4th 452, 469 (6th Cir. 2022). Relatedly, a plaintiff must plausibly allege that the defendant "act[ed] intentionally in a manner that" created those conditions of confinement and that his injury resulted from the defendant's act or omission. *Westmoreland*, 29 F.4th at 729.

Carrier alleges that Patterson placed him in administrative segregation at least one month before Porter's assault. Those conditions of confinement did not expose Carrier to a substantial

risk of serious harm. Indeed, Patterson apparently recognized that Carrier was at risk and isolated him for his own protection. Even so, Carrier insists that "he faced a substantial risk of serious harm in the moments before Porter attacked him." Appellant Br. at 13. But that risk arose from Rymer's conduct—not Patterson's isolation order. Thus, Porter's access to Carrier was not a condition of confinement that Patterson—the only defendant here—created. Nor does that condition of confinement still exist. Despite Carrier's insistence that a "substantial risk persists" because he and Porter live on the same cell block, nothing in the complaint suggests that the proximity of their cells presents the same risk of harm that existed when Porter was released with Carrier in the recreation area. Thus, even though the district court technically should have applied the Fourteenth rather than the Eighth Amendment, it correctly held that Carrier failed to state a claim. And we can affirm here on any basis supported by the record. *Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009).

Carrier also argues that the district court erred by entering a dismissal with prejudice—on a pre-service screening—without first giving him the opportunity to amend. Appellant Br. at 20. We review the dismissal with prejudice for abuse of discretion. *Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006).

On this point, Carrier's arguments support only the proposition that, if Carrier had asked for leave to amend, the court could have granted it. But Carrier never asked for such leave, and "a district court does not abuse its discretion in failing to grant a party leave to amend where such leave is not sought." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1042 (6th Cir. 1991). Nor do we see any miscarriage of justice resulting from the dismissal. The district court did not abuse its discretion.

The district court's judgment is affirmed.